**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0343n.06

Case No. 17-4158

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>ERIC L. JOSEPH,</td><td>)</td><td rowspan="13"><table><tr><td>**FILED**<br>Jul 13, 2018<br>DEBORAH S. HUNT, Clerk</td></tr></table></td></tr>
</table>

ERIC L. JOSEPH,                        )
                                       )
    Plaintiff-Appellant,               )
                                       )    ON APPEAL FROM THE UNITED
v.                                     )    STATES DISTRICT COURT FOR
                                       )    THE NORTHERN DISTRICT OF
COMMISSIONER OF SOCIAL SECURITY,       )    OHIO
                                       )
    Defendant-Appellee.                )
                                       )

BEFORE: GUY, BATCHELDER, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Eric Joseph appeals the district court's judgment affirming the denial of his application for disability insurance benefits. Because the administrative law judge ("ALJ") applied the proper legal standards and because substantial evidence supports her findings of fact, we AFFIRM.

I.

Joseph served in the United States Army from 2001 to 2005. In 2004, he was operating in an Iraq combat zone when enemies attacked his vehicle with improvised explosive devices. During the ensuing chaos, Joseph's vehicle crashed into the back of a bus. The impact caused him to be severely bounced, resulting in injury.

After Joseph was honorably discharged from the service, the United States Department of Veterans Affairs ("VA") found him eligible to receive veterans' benefits because of his service-related injuries. Joseph received a 90% service disability.

Since his discharge, the VA has also provided Joseph with substantial medical care. His medical records list the following diagnoses: depressive disorder, ankle instability, morbid obesity, tobacco dependence, hyperlipidemia, post-traumatic stress disorder ("PTSD"), gastroesophagael reflux disorder, neck pain, migraines, alcohol abuse, and cannabis abuse. His treatments have included: medications; counseling; psychiatric care; anger management therapy; alcohol and drug therapy; couples therapy; residential PTSD rehabilitation program; physical therapy; and hospitalization.[1]

In May 2015, Joseph applied for disability insurance benefits.[2] He claimed disability beginning on June 25, 2013, the day after the denial of his prior application. He alleged traumatic brain injury; bad ankles and knees; degenerative disc disease; neck problems; tinnitus; nerve damage and numbness in his hands and legs; anxiety; depression; panic attacks; mood disorder; and breathing problems. The Social Security Administration denied Joseph's application, both initially and upon reconsideration.

Joseph then requested and received an administrative hearing. He was represented by counsel and a vocational expert. During the hearing, Joseph testified about his service-related injury. He reported many physical impairments: migraine headaches; numbness in his hands; light sensitivity; vertigo; ankle and knee instability; ringing in both ears; and difficulty with

---

[1] A detailed description of Joseph's entire medical history is outlined in the magistrate judge's report and recommendation, R.20, Page ID# 2420–28.

[2] This was Joseph's second application. He first applied in October 2012. In that application, he alleged disability beginning in August 2009, when he was let go from his job as an aviation mechanic because of his PTSD symptoms. After a hearing, an ALJ found Joseph not disabled.

2

walking, standing, lifting, and gripping. He also testified about experiencing anxiety attacks, sweating, heart palpitations, nightmares, and unpredictable changes in his emotions and behavior.

As for his recent employment, Joseph explained that in 2014 he worked at the National History Museum, where he cleaned and worked the greeter's desk. He explained that he sometimes had to leave work early, however, because of his PTSD symptoms, anxiety, and panic attacks. He also relayed his having tried to work on a family farm but explained that it did not work out because his family members thought he had too many problems and did not want him to get hurt. He considered pursuing a college education but decided against it because he had memory issues and trouble focusing.

Joseph testified that he now lives with his wife and two of his children in a two-story house but resides on the main floor. He spends his days helping around the house—vacuuming, washing dishes, doing laundry, and watching his kids. He reported being unable to lift more than ten pounds.

Regarding medication, Joseph represented that he was taking an anxiety medicine, but only as needed. But he later testified that he no longer takes that medicine. He also testified that he goes to group therapy for combat veterans with PTSD twice a month and individual therapy twice a month as well. He stated that the last time that he saw a psychiatrist was a year ago.

After the hearing, the ALJ issued a decision finding Joseph was not disabled and not entitled to disability insurance benefits. She followed the Social Security Administration's five-step evaluation process.[3] *See* 20 C.F.R. § 404.1520(a)(4). She found that his claim satisfied the

---

[3] Under this process, first, the applicant must show that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the applicant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, the applicant may show that his impairment meets or equals a listed impairment; if he does, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot decide on disability based on medical evaluations and current work activity, and the applicant has a severe impairment, then the Commissioner will review

first two requirements because he last met the insured status requirements of the Social Security

Act on December 31, 2015, and he did not engage in substantial gainful activity from his alleged

onset date through the date he was last insured. She then proceeded to the third step. She noted

the following severe impairments:

> [H]istory of cervical spondylosis / cervical degenerative disc disease; chronic back pain due to degenerative arthritis with radiculopathy; history of right ankle fracture, currently stable; reported knee and ankle pain; migraine headaches; tinnitus; episodic mood disorder / depression; [PTSD]; anxiety; history of alcohol dependence with episodic abuse pattern; cannabis abuse currently in remission; obesity; mild thoracic degenerative changes; and severe opioid use disorder, currently in remission.

R.9, Page ID# 59. She compared these impairments with those listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, and found that Joseph's impairments did not meet or equal the severity of

the listed ones.[4] Based on this, she concluded that Joseph did not automatically qualify as disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(iii), (d).

Next, the ALJ evaluated Joseph's residual functional capacity ("RFC"). In doing so, she

first explained that she was bound by the prior ALJ's findings and determinations under Social

Security Acquiescence Rulings 98-3(6) and 98-4(6) because although there was new evidence in

the record, the new evidence showed no substantial change in Joseph's conditions. She found

that the prior ALJ's RFC analysis remained consistent with the objective medical evidence of

record. With respect to Joseph's testimony about his physical and mental impairments, the ALJ

made a credibility determination, explaining that she found that Joseph's medical impairments

---

the applicant's residual functional capacity ("RFC") and relevant past work to determine if he can do past work. 20 C.F.R. § 404.1520(e), (f). And fifth, if the applicant cannot do his past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find him disabled. 20 C.F.R. § 404.1520(f), (g).

[4] She specifically reviewed Listing 1.02 for major dysfunction of a joint, Listing 1.04 for disorders of the spine, Listing 11.03 for epilepsy-nonconvulsive epilepsy, Listing 12.04 for affective disorders, Listing 12.07 for somatoform disorders, Listing 12.08 for personality disorders, and Listing 12.09 for substance addiction disorders.

"could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." R.9, Page ID# 64. She found that despite his impairments, Joseph could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds often; sit up to six hours in an eight-hour workday; and walk/stand, in combination, up to six hours in an eight-hour work day–with the following limitations:

> The claimant requires a sit/stand option that allows for alternating between sitting and standing up to every 30 minutes if needed, but the positional change will not render the individual off task. The claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot perform any forceful grasping or gripping with the hands. He requires the ability to avoid concentrated exposure to wetness and hazards (such as wet/slippery surfaces, dangerous moving machinery, and unprotected heights[)]. He can have no concentrated exposure to bright/flashing lights and loud noise. Mentally, the claimant cannot understand, remember, or carry out detailed or complex job instructions but can perform simple, repetitive tasks on a sustained basis (meaning 8 hours a day, five days a week, or an equivalent work schedule) with no sudden or unpredictable workplace changes. The claimant cannot perform tasks requiring intense/focused attention for prolonged periods of time and must have work at a flexible pace (where the employee is allowed some independence in determining the timing of different work activities or the pace of work). The claimant can have only casual/superficial interactions with others, including supervisors, coworkers, and the general public with no exposure to intense or critical supervision.

*Id.* at 62.

Based on this, the ALJ concluded that Joseph could perform the requirements of representative occupations: electronics worker, electrical accessories assembler, and folder. Thus, she found Joseph was not under a disability.

Joseph appealed, but the Appeals Council denied his request for review. Joseph then filed a complaint in the district court seeking review of the ALJ's decision. The magistrate judge issued a report and recommendation to affirm. Joseph objected, asserting three errors. First, he argued that the ALJ improperly failed to consider that the VA assigned him a 90% service disability rating.

5

Second, he contended that the ALJ failed to consider the effect of Joseph's impairments in combination. And third, he argued that the ALJ should have granted Joseph's testimony greater weight based on his military service.

The district court adopted the magistrate judge's report and recommendation over Joseph's objections and affirmed the ALJ's decision. The district court held that the ALJ considered the VA's disability rating and adequately articulated her reasons for discounting its weight in her analysis. The district court held that the ALJ clearly considered Joseph's impairments in combination and found that he waived any argument that the ALJ erred in her RFC determination because he failed to address the magistrate judge's findings. And the district court determined that the ALJ had no duty to afford greater credibility to his testimony just because of his status as a military veteran.

Joseph appealed.

II.

In social security cases, we review a district court's decision de novo. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). That said, our review is limited to deciding whether the Commissioner applied the correct legal standards and whether its factual determinations are "supported by substantial evidence." 42 U.S.C. § 405(g); *see Jordan*, 548 F.3d at 422. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jordan*, 548 F.3d at 422 (citation and internal quotations marks omitted). If substantial evidence supports the ALJ's conclusion, we will affirm, even if substantial evidence also exists in the record supporting a different conclusion. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).

On appeal, Joseph asserts the same three objections to the ALJ's decision that he asserted below. We find all three arguments unpersuasive.

Turning first to Joseph's argument about the ALJ's treatment of the VA's disability decision, we find no error. Though other agencies make their own decisions about benefits eligibility, the Social Security Administration's regulations clearly instruct that the Commissioner is not bound by those decisions. *See* 20 C.F.R. § 404.1504 ("Other governmental agencies . . . such as the Department of Veterans Affairs . . . make . . . benefits decisions for their own programs using their own rules. [Such] a decision by any other governmental agency . . . about . . . entitle[ment] to any benefits is based on its rules, [and] is not binding on us."). The basis for this regulation is sound: different rules applied by other agencies "may limit the relevance of a determination of disability made by another agency." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) (quoting SSR 06–03p, 2006 WL 2329939, at *7 (August 9, 2006)). Still, we have clarified that an ALJ must at least consider a VA's disability decision and explain reasons for the weight she assigns to it. *LaRiccia*, 549 F. App'x at 388.

The ALJ appropriately addressed the VA's finding here. She acknowledged the VA's disability rating and outlined each percentage of service related disability.[5] *See* R.9, Page ID# 67. She also afforded "some weight . . . to these ratings," deciding that they "show that the claimant has limitations in his ability to perform work-related tasks as set forth in the assigned residual functional capacity." *Id.* at Page ID# 68. And importantly, she explained why Joseph's impairments led her to a different determination than the one that the VA reached. Specifically,

---

[5] In October 2013, the VA assessed Joseph's disability rating: 10% for limited motion of the ankle; 10% for inflammation of sciatic nerve; 20% for degenerative arthritis of the spine; 10% for limited flexion of the knee; 10% for lumbosacral or cervical strain; 10% for tinnitus; 30% for migraine headaches; 20% for inflammation of lower radicular nerves; and 30% for PTSD.

she explained the difference between the VA's disability system and Social Security's: the VA expresses disability as a percentage of diminished earning capacity "applied to a hypothetical average person's ability to earn income," whereas Social Security "does not assess degrees of disability" and determines whether the applicant can make an adjustment that allows him to perform "any other substantial gainful work that exists in the national economy." *Id.*

In sum, the ALJ weighed the VA's determination in deciding the extent of Joseph's impairments and how they caused him limitations in his ability to perform work-related tasks. But she ultimately distinguished her decision from the VA's on grounds that "accurately reflect the approaches taken in the two systems." *LaRiccia*, 549 F. App'x at 388. Thus, Joseph has not shown that the ALJ's decision lacked substantial evidence.

We also reject Joseph's contention that the ALJ failed to evaluate Joseph's impairments in combination. During step three in the ALJ's evaluation process, the applicant may show that his impairment meets or equals a listed impairment, in which case, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); *see Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments defines impairments that the agency considers "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a); *see Sullivan v. Zebley*, 493 U.S. 521, 531–32 (1990). Step three requires the ALJ "to actually evaluate the evidence, compare it to [the applicable] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

The ALJ properly considered whether Joseph had an impairment or combination of impairments that met or medically equaled the listings. The ALJ assessed the medical evidence on Joseph's physical and mental impairments, R.9, Page ID# 59, and compared them (in

combination) to the listed impairments, *id.* at Page ID# 60–62. Specifically, she considered Listing 1.02 for major dysfunction of a joint, Listing 1.04 for disorders of the spine, Listing 11.03 for epilepsy-nonconvulsive epilepsy, Listing 12.04 for affective disorders, Listing 12.07 for somatoform disorders, Listing 12.08 for personality disorders, and Listing 12.09 for substance addiction disorders. Moreover, the record plainly disproves Joseph's assertion that the ALJ failed to consider his impairments in combination. *See, e.g.*, *id.* at Page ID# 60 ("[W]hen considered individually or in combination, the claimant's physical impairments did not meet or equal the level of severity set forth in any of the listed impairments."); *id.* ("The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings . . . ."). Thus, the ALJ applied the correct legal standards, and her findings were supported by substantial evidence.[6]

Finally, Joseph argues that the ALJ erred in failing to hold his testimony in higher regard because of "his work record in the service." Appellant's Br. at 18. "[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (alteration in original) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). "[S]ince the ALJ is charged with observing the claimant's demeanor and credibility," we afford "great weight" to an ALJ's credibility determinations about the claimant. *Id.* (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

---

[6] The district court determined that Joseph waived any challenge to the ALJ's RFC finding because he failed to articulate any objection to the magistrate judge's findings in that regard. R.24, Page ID# 2487–89. Joseph did not address the district court's waiver holding in his appellate brief. Thus, he has forfeited any challenge to the district court's decision on waiver. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is [forfeited].").

Here, the ALJ appropriately considered the regulatory factors of objective medical evidence, medical opinions, treatment history, and evidence of daily activities in assessing Joseph's subjective complaints. *See* 20 C.F.R. § 404.1529; R.9, Page ID# 64–68. She explained that based on her review of this evidence, she did not find Joseph's testimony on the intensity, persistence, and limiting effects of his symptoms fully credible. R.9, Page ID# 64. We have upheld ALJ decisions based on similar discounting of the reliability of a claimant's testimony about disabling pain when an ALJ finds contradictions between medical reports and claimant's testimony. *See Walters*, 127 F.3d at 531. And Joseph puts forth no case law supporting his argument that military service requires a heightened level of deference. "[W]ork history"—even commendable military service—"is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). Thus, because the ALJ's credibility determination was based on her comparison of the medical evidence with Joseph's testimony, we do not find that it lacked substantial evidence.

### III.

For the reasons set forth above, we AFFIRM the judgment of the district court.